IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| EDDIE M. KENNON, )<br>)<br>) | CIVIL ACTION NO. 0:06-1937-PMD-BM |
| Plaintiff, )<br>) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| )<br>MICHAEL J. ASTRUE,[1] )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>) | |
| Defendant. )<br>_____ ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on May 2, 2003, alleging

disability as of September 25, 2001 due to chronic cervical syndrome and cervical degenerative disc

disease. (R.pp. 44-46, 55). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff

then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 4,

2006. (R.pp. 220-263). The ALJ thereafter denied Plaintiff's claim in a decision issued February 28,

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



2006. (R.pp. 9-19). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 4-6).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as



it is supported by substantial evidence." <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty-three (53) years old when he alleges his disability began, has an eighth grade education with prior relevant work experience as a groundsman for a tree company. (R.pp. 56, 97, 223-224). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform his past relevant work, classified as "heavy"[2] in nature, he nevertheless retains the residual functional capacity to perform a restricted range of "medium" work[3], and is therefore not disabled. (R.pp. 17-19, 258-259).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give proper weight to the opinions of Plaintiff's treating physician; by failing to properly assess Plaintiff's credibility, fully develop the record, or consider the effects of Plaintiff's impairments in combination; and by improperly concluding that Plaintiff has the RFC for medium work and is able to work with his impairments. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the

---

[2]"Heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 416.967(d).

[3]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

3



conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

The ALJ found in his decision that Plaintiff suffers from chronic cervical syndrome and degenerative cervical disc and joint disease, further finding that this was a "severe" impairment under the Social Security Act. 20 C.F.R. § 404.1521(a) [an impairment is severe when it is more than a slight abnormality that has more than a minimal effect on the ability to do basic work activities]. However, the question before the Court is not whether Plaintiff has or is suffering from this impairment, but whether substantial evidence supports the ALJ's finding that Plaintiff's impairment is not of a disabling severity. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. The record does contain substantial evidence to support this finding.

Plaintiff's medical records reflect that Plaintiff was involved in a motor vehicle accident on September 25, 2001, following which he complained of cervical and lumbar pain. (R.pp. 174-175. An examination revealed mild cervical tenderness, while an x-ray of Plaintiff's cervical spine showed degenerative disc disease with degenerative changes at C4-C5, but no acute abnormality. (R.pp. 127, 184, 186). Plaintiff was diagnosed by Dr. John Lee with acute cervical/thoracic strain. (R.p. 176). Plaintiff thereafter began to be seen by Dr. Samuel Stone. Dr. Stone's records and examinations, beginning on September 27, 2001 and continuing through March 2002, generally reflect normal neurological findings and good range of motion of the neck with no



swelling of the extremities (although with some tenderness in the cervical area). See generally, (R.pp. 129-135, 140-141). Dr. Stone diagnosed Plaintiff with cervical strain, and treated Plaintiff's condition conservatively.  See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability].

In April 2002, Dr. Stone referred Plaintiff to Dr. Nick Grivas, a neurosurgeon, who noted that the results of a cervical myelogram were entirely within normal limits, and who also recommended that Plaintiff's condition be treated conservatively.  (R.p. 139).  Plaintiff thereafter continued to be seen by Dr. Stone through September 2002, with these medical records reflecting that Plaintiff was released to return to work, that he was doing strengthening exercises, that Plaintiff had only slight tenderness of the trapezial areas with good range of motion, and that Plaintiff was "doing fine".  (R.pp. 142-143, 147).

On September 23, 2002, Plaintiff complained to Dr. Stone that he could no longer perform his previous job, which required heavy lifting of from 50 to up to 100 pounds. Plaintiff complained of increased pain and that he "just [could] not do the kind of work that he was doing." (R.pp. 17, 144).  Dr. Stone diagnosed Plaintiff with recurrent trapezius strain with possible neuropathy. (R.p. 144).  A subsequent MRI performed on September 26, 2002 found only minimal posterior spurring at C4-5 and C5-6, unchanged since March 2002, with no evidence of disc herniation or significant spinal canal stenosis at any level. (R.pp. 145-146).  At the request of Dr. Stone, Plaintiff was referred to Dr. Neal Taub for a physical medicine rehabilitation evaluation.

Plaintiff saw Dr. Taub on November 6, 2002.  Dr. Taub noted that Plaintiff's MRI's revealed only minimal posterior spurring at C4/5 and C5/6 with no evidence of disc herniation or significant spinal canal stenosis at any level.   Neurological examination of Plaintiff's upper



extremities demonstrated 5/5 strength with normal and symmetrical DTRs, although he exhibited tenderness in his neck with pain on motion.  Dr. Taub diagnosed Plaintiff with chronic cervical syndrome status post motor vehicle accident, with modest cervical degenerative disc disease.  Dr. Taub did not believe Plaintiff could return to his previous type of work.  (R.p. 149). Following this examination, Plaintiff saw Dr. Stone on January 31, 2003, who agreed with Dr. Taub that Plaintiff could no longer "do the kind of work he does now...." (R.p. 150).

 Plaintiff continued at this point to be seen by Dr. Taub, who assigned him a 5% permanent partial impairment rating of the back (cervical spine) on February 11, 2003. *Cf.* Waters v. Gardner, 452 F.2d 855, 858 (9th Cir. 1971) [concluding that a whole person impairment rating of less than thirty (30%) percent was inconsistent with allegations of disability].  On March 13, 2003, Dr. Taub noted that Plaintiff reported that the medication he was taking had been "very helpful [in] reducing his pain....".  See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [ If a symptom can be reasonably controlled by medication or treatment, it is not disabling].  On April 30, 2003, Dr. Taub opined that Plaintiff had achieved maximum medical improvement, and assigned him a 6% permanent partial impairment rating.  On July 29, 2003, Dr. Taub noted that the medication Plaintiff was taking had "significantly diminished [his] level of pain" and that Plaintiff was "able to be relatively physically active."  On October 1, 2003, Plaintiff noted that his pain control had been "excellent, allowing him to perform much more physical activity than that noted previously."  See generally, (R.pp. 193-197, 203).

 On November 18, 2003, Plaintiff's medical records were reviewed by state agency physician Frank Ferrell.  Dr. Ferrell completed a physical residual functional capacity assessment in which he found that Plaintiff could perform the lifting requirements of medium work; that he could



sit, stand and/or walk with normal breaks for a total of about six hours in an eight hour work day; and that he could push and/or pull without limitations other than as is shown for lifting and/or carrying. No manipulative, visual, communicative, or environmental limitations were noted, but Dr. Ferrell opined that Plaintiff could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps, stairs and crawl, although he could frequently balance, stoop, kneel, and crouch. (R.pp. 113-114).

Medical records from both Dr. Taub and Dr. Stone from December 2003 through June 2004 continue to reflect that Plaintiff's symptoms were generally well controlled with medication, with notations that Plaintiff was walking up to six miles per day. See generally, (R.pp. 155-156, 161, 205-206). On September 15, 2004, Plaintiff went to see Dr. Mark Smith for a neurosurgical consultation. Plaintiff reported only conservative treatment for his condition, which he described as neck and shoulder pain, worse with activity. An examination revealed that Plaintiff's motor strength was 5/5 throughout his upper and lower extremities and that Plaintiff had a supple and non-tender neck. Dr. Smith diagnosed cervical cervicalgia with muscle strain and muscle spasms, and noted that since Plaintiff's last MRI was in 2002, he wanted to obtain a current MRI to see if there had been any worsening of his condition. (R.pp. 199-200). An MRI was performed on September 27, 2004, which revealed some mild disc degenerative change in the upper and mid-cervical spine, an incidental vertebral body hemangioma involving the T3 vertebral body, but no evidence of focal disc herniation or significant canal stenosis. (R.p. 198). Plaintiff continued thereafter to see both Dr. Taub and Dr. Stone; see generally, (R.pp. 166, 170, 207-209, 212); which records include a notation by Dr. Taub that Plaintiff's most recent MRI did not demonstrate a surgically remediable lesion, and that continued conservative treatment for Plaintiff's condition was appropriate. (R.p. 208).



After review of these medical records and consideration of Plaintiff's subjective testimony as well as that of his wife; see (R.pp. 14-17); the ALJ found and concluded that Plaintiff retained the residual functional capacity to perform medium work with the limitations of only occasionally pushing and/or pulling with the upper extremities and no climbing of ladders of scaffolds, proximity to hazardous equipment, work requiring literacy, or rapid movements of the neck. (R.p. 15). The records and opinions of Plaintiff's treating and examining physicians discussed hereinabove provides substantial evidence to support the residual functional capacity found by the ALJ; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as does the opinion of the state agency physician. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]. While Plaintiff argues that the ALJ failed to give proper weight to the opinion of Dr. Stone, noting that on February 3, 2003 Dr. Stone had stated: "with his present condition, there is no way [Plaintiff] can return to his present job or do anything that requires manual lifting, etc.", this was not a statement of disability and the undersigned does not otherwise find that the ALJ's conclusions as to Plaintiff's residual functional capacity are inconsistent with Dr. Stone's medical records or with the other medical evidence. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].



Plaintiff's argument that the decision should be reversed because the ALJ conducted a flawed credibility analysis is also without merit. The ALJ reviewed Plaintiff's testimony regarding the nature and extent of his limitations as well as the testimony of his wife, and compared this testimony with Plaintiff's activities and the objective medical evidence in finding that his testimony was not fully credible. (R.pp. 15-17). The undersigned does not find that the ALJ conducted an improper credibility analysis, or that his decision otherwise reflects a failure to consider the combined effect Plaintiff's impairment had on his ability to work. Dryer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision] ; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational] . See Hunter 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiffs testimony and the other evidence of record in evaluating the credibility of the plaintiffs subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Cruse v. Bowan, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Melton v. A pfel,181 F.3d 939,942 (8`h Cir. 1999) [lack of medically necessary restrictions supported the ALJ's non-disability findings]; *cf.* Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) [ALJ properly considered whether claimant's impairments in combination were disabling by separately discussing claimant's impairments].



As for Plaintiff's claim that the ALJ should have more fully developed the record with respect to whether Plaintiff suffers from depression, there was no evidence presented to show that Plaintiff suffers from any serious mental impairment. Plaintiff has never been diagnosed with a mental health problem or been treated by a mental health specialist, nor did Plaintiff make a claim of a mental impairment in his application. Plaintiff's testimony at the hearing that he felt depressed and his wife's testimony that he took sample antidepressant medications on an occasional basis did not by itself require the ALJ to obtain additional evidence on this issue. (R.pp. 234, 256). See Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) [no error where ALJ failed to order consultative examination before concluding claimant had no mental impairment or claimant did not allege disability due to mental impairment and presented only minimal evidence on issue]; Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) [ALJ not required to order consultative examination where record fails to establish such an examination is necessary]; see also 20 C.F.R. § 404.1519a.

Plaintiff's argument that the ALJ failed to evaluate his residual functional capacity in compliance with SSR 96-8p, which requires a discussion describing how the evidence supports the ALJ's conclusion, is also without merit.  The ALJ evaluated the medical records and evidence concerning Plaintiff's condition and noted the fact that Plaintiff obtains relief from medication; that Plaintiff drives on a regular basis and was able to even take a weekend trip to Charleston; that Plaintiff's physicians gave Plaintiff a low disability rating of the cervical spine; that his clinical examinations have yielded few abnormal signs; that Plaintiff's muscles had shown no signs of atrophy or other evidence of disuse; that the state agency physician opined that Plaintiff could perform medium work, and that Dr. Stone commented that Plaintiff had participated in a work hardening program but could not lift more than 50 pounds without developing pain, all of which are



consistent with the ALJ's RFC findings.  (R.pp. 15-17, 19.  *Cf.* <u>Roberts v. Masanari</u>, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); <u>Buckholtz v. Barnhart</u>, 98 Fed.Appx. 540, 547 (7th Cir. 2004); <u>Delgado v. Commissioner of Social Serv.</u>, 30 Fed.Appx. 542, 547-548 (6th Cir. 2002).  Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit, as "'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies  in the record.'" <u>Delgado</u>, 30 Fed.Appx. at 548 (quoting <u>Bencivengo v. Comm'r of Soc. Sec.</u>, 241 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)); <u>Rogers v. Barnhart</u>, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). <u>See</u> <u>also</u> <u>Osgar v. Barnhart</u>, No. 02-2552, 2004 WL 3751471 at *2 (D.S.C. Mar. 29, 2004), <u>aff'd</u>, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005).

Finally, the record reflects that the ALJ obtained vocational expert testimony at the hearing, where the vocational expert was proffered a hypothetical which reflected the residual functional capacity found to exist by the ALJ.  (R.p. 259).  In response to this hypothetical, the VE identified several unskilled medium to light jobs which Plaintiff could perform with his limitations, considering his age and educational background.  (R.pp. 260-261).  Plaintiff argues that he does not meet the literacy requirements for the flagger position identified by the VE, citing to DOT No. 372.667-022.  However, even if it is conceded that Plaintiff is not qualified for this position, the Commissioner notes that the job of sweeper (also identified by the VE) is classified by the DOT as requiring level 1 for reasoning, math and language, which was consistent with Plaintiff's past job. *Cf.* DOT No. 389.683-010 and No. 408.667-010.  The vocational expert testified that 2,000 to 3,000 of these jobs exist in the regional economy.  Further, as there was no apparent conflict between the vocational expert's testimony and the DOT's description of the sweeper position, the ALJ did not

11



commit reversible error by failing to ask the VE whether the evidence provided conflicted with the DOT. See Bickford v. Barnhart, 242 F.Supp.2d 39, 42 (D.Me. 2002) [Any error in ALJ's failure to include a specific restriction in his hypothetical question to VE was harmless, where two out of three jobs identified by VE did not require the restriction]; *cf.* SSR 00-4p; Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987) [Error that had no practical effect on the outcome of the case is not cause for reversing the Commissioner's decision]. See also Mickles, 29 F.3d at 921.

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 25, 2007

12

